Bradley D. TINGEY, husband; Amy E. Tingey, wife, Bradley D. Tingey, as guardian ad litem for Trevor F. Tingey, a minor, Plaintiffs–Appellants,

v.

PIXLEY–RICHARDS WEST, INC., a Massachusetts corporation, Blue Cross & Blue Shield of Massachusetts, a foreign corporation, Defendants–Appellees.

Bradley D. TINGEY, husband, Amy E. Tingey, wife, and Bradley D. Tingey, as guardian ad litem for Trevor F. Tingey, a minor, Plaintiffs–Appellees,

v.

PIXLEY–RICHARDS WEST, INC.,
a Massachusetts corporation,
Defendant–Appellant.

Bradley D. TINGEY, husband, Amy E. Tingey, wife, Bradley D. Tingey, as guardian ad litem for Trevor F. Tingey, a minor, Plaintiffs–Appellees,

v.

PIXLEY–RICHARDS WEST, INC., a Massachusetts corporation, Roland "Buzz" Mosher, and Jane Doe Mosher, husband and wife, John Does I through V, White Corporation; Black Corporation, Defendants,

and

Blue Cross and Blue Shield of
Massachusetts, Defendant–
Appellant.

Nos. 89–15377, 89–15402 and 89–15452.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 19, 1991.

Decided Jan. 9, 1992.

R. Kelly Hocker, Hocker & Axford, Tempe, Ariz., for plaintiffs-appellants-cross-appellees.

Robert L. Dysart, Bess & Dysart, Brian Holohan, Crampton, Woods, Broening & Oberg, Phoenix, Ariz., for defendants-appellees-cross-appellants.

Before GOODWIN and SNEED, Circuit Judges, and TAYLOR,* District Judge.

SNEED, Circuit Judge:

The district court dismissed a number of counts of the complaint of the plaintiffs, the Tingeys, and remanded other such counts to the Arizona Superior Court of Maricopa County. The Tingeys appeal the dismissals and the defendants appeal the remands. We hold all such claims should have been dismissed, but in the interest of justice, remand the case to the district court to allow the plaintiffs a final opportunity to attempt to plead a federal cause of action.

## I.

### FACTS AND PROCEEDINGS BELOW

On November 13, 1987, the Tingey family filed in the Arizona court a wrongful termination case. In their complaint, they alleged the following facts.

* Honorable Gary L. Taylor, United States District Judge for the Central District of California, sitting by designation.

Bradley Tingey, the father, began working at Pixley–Richards West, Inc. (Pixley) in March of 1982. The company had an employee manual which, along with oral statements, established that employees would only be terminated for cause and would be given "progressive discipline," including probation and resort to specified grievance procedures.

Tingey subscribed to the company's comprehensive medical plan issued by Blue Cross and Blue Shield of Massachusetts, Inc. (Blue Cross), which included health coverage for an employee's spouse and children. The plan provided that "if you leave your job, you will be given an opportunity to continue Blue Cross and Blue Shield coverage on a direct payment basis." The plan also provided maternity benefits covering complications of pregnancy, care of the newborn, and any life-endangering complication of the child.

In August of 1985, Amy Tingey gave birth to a boy, Trevor, who was born with spina bifida. In November of 1985, Blue Cross received a bill for $18,000 to cover the delivery and postnatal care costs. Blue Cross sent a copy of the bill to Pixley, which received it around November 13 or 14. On November 15, Pixley fired Tingey without either explanation, progressive discipline, or an exit interview. Blue Cross paid all benefits due under the policy up to the date of termination, but has refused to allow the Tingeys to convert the policy.

In their complaint, the Tingeys directed the Arizona court to provisions of the Arizona insurance code, A.R.S. §§ 20–831 B & 20–1408 A, which require group disability benefits to include coverage for the "care and treatment of medically diagnosed congenital defects and birth abnormalities." They described these provisions as further requiring that Blue Cross maintain coverage for Trevor so long as Bradley Tingey remained employed with Pixley. In addition, the Tingeys characterized other provisions of Arizona law as prohibiting insurance carriers and employers from "making any misrepresentations to any policy holder for the purpose of inducing or intending to lapse, forfeit, surrender, retain or convert any insurance policy," Original Complaint (citing A.R.S. §§ 20–443 5, 20–1404 A 2), and as prohibiting carriers from "unfairly discriminating between individuals of the same class and life and the rates charged for any contract," *id.* (citing A.R.S. § 20–448 C).

Based on the foregoing, the Tingeys' state court complaint alleged four claims for relief:

I. [Pixley and Blue Cross] breached its/their duty of good faith and fair dealing, implicit in every insurance contract by terminating, or causing Tingey to be terminated and not giving proper notice of conversion rights, with the intent of depriving Trevor of his rights under the group insurance contract, and thereby depriving Trevor Tingey of required and necessary coverage.

II. The termination of Tingey's employment by Pixley was made in bad faith and with the intent to deprive his son of his rights under the group insurance contract.

The termination of Tingey's employment by Pixley was bad cause and in violation of Arizona's public policy requiring children with congenital defects to be covered under group insurance plans.

III. The actions and representations of Pixley ... were implied-in-fact covenants and created a reasonable expectation in Tingey of continued employment, and that his employment would not be terminated without good cause, and that if cause were alleged, that he would be given the procedural protections in place at Pixley.

Pixley did not have cause to terminate Tingey's employment and Pixley did not follow its own internal procedures when it terminated Tingey.

Pixley breached the contract of employment and the covenant of good faith and fair dealing implicit in every employment contract by ter-

minating Tingey without good cause.

IV. Roland "Buzz" Mosher made a decision to terminate Brad, for the reasons herein alleged, intentionally and willfully. The said acts interfered with an advantageous financial relationship between Pixley and Tingey.

By reason of Mosher's act, Tingey has been deprived of the increments of his employment with Pixley.

The remedies the Tingeys sought included damages for anxiety, emotional distress, loss of sleep, loss of benefits, loss of employment, loss of income, and damages suffered from the deprivation of their "rights for coverage" under the Blue Cross policy. The Tingeys also sought punitive damages and attorney's fees.

On February 4, 1988, Pixley filed a petition for removal of the state action to the federal district court. Pixley alleged that the Tingeys' claims arose under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, and were therefore removable to the district court under 28 U.S.C. §§ 1331 & 1441. Relying on *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), Pixley concurrently filed a motion to dismiss the Tingeys' entire complaint on ERISA preemption grounds.[1] The Tingeys opposed the motion to dismiss and moved the court to remand the entire case to the Arizona Superior Court.

At its initial hearing, the district court denied the Tingeys' request for a remand. The court did not, however, dismiss the case, but requested that the Tingeys amend their complaint by "indicating the section of ... ERISA" under which they might proceed.

The Tingeys declined to follow its directions. Instead, they submitted an amended complaint that largely recast and expanded the earlier one. The grounds for recovery now numbered ten. They were as follows:

I. *Breach of Contract:* [Pixley's actions] are express and implied-in-fact covenants which created a reasonable expectation in Tingey of continued employment, and that his employment would not be terminated without good cause, and that if cause were alleged, that he would be given procedural protections.

Pixley did not have cause to terminate Tingey and did not follow its own internal procedures when it terminated Tingey.

II. *Breach of Covenant of Good Faith and Fair Dealing:* Pixley breached the covenant of good faith and fair dealing existant [sic] in the employment agreement.

III. *Tort Breach:* [Tingey's] termination by Pixley constituted a tortious breach of the duty of good faith and fair dealing.

Tingey's termination by Pixley was for a bad cause and in violation of Arizona's public policy requiring children with congenital defects to be covered under group insurance plans.

IV. *Intentional Infliction of Emotional Distress:* [Roland Mosher] undertook to inflict severe emotional distress upon Tingey.

The means utilized and the objects and intent of the actions are outrageous and unconscionable.

V. *Insurance Bad Faith:* [Pixley and Blue Cross] breached its/their duty of good faith and fair dealing, implicit in every insurance contract by terminating, or causing Tingey to be terminated.

VI. *Violation of Statute:* [Blue Cross] unfairly discriminated against Tingey because of Trevor's condition in violation of A.R.S. § 20–448.

VII. *Violation of Statute:* [Blue Cross] violated A.R.S. § 20–1402 requiring group policies to provide coverage for children with congenital defects and birth abnormalities by participating in procuring or instituting Tingely's [sic] termination

---

1. Blue Cross did not join in this motion because it was, at the time, contesting personal jurisdiction. The district court subsequently ruled against Blue Cross on this matter, and Blue Cross has decided not to take the issue up on appeal.

of employment. Plaintiff further alleges that Blue Cross violated A.R.S. § 20–1408 by failing to offer conversion rights to Tingey after he was terminated.

VIII. *Insurance Bad Faith:* Blue Cross acted in bad faith and breached its duty of good faith and fair dealing owed to Tingey.

IX. *Intentional Interference:* [Roland Mosher] undertook to interfere with the advantageous contractual relationship between Brad Tingey and Pixley and in that regard has interfered with, cause [sic] the breach of, or actually sought to deprive the plaintiff of employment opportunities with Pixley.

The acts of defendant Mosher have collectively resulted in Brad's contractual rights being frustrated as the result thereof, Brad has been deprived of the benefits of his employment contract with Pixley.

X. *Denial of Prospective Benefits:* Pixley and/or Blue Cross terminated Tingey to deprive Tingey and his son, Trevor, of prospective benefits under the group insurance contract issued by Blue Cross.

Pixley, this time joined by Blue Cross, again moved the district court to dismiss the entire Tingey complaint as preempted by ERISA. The Tingeys opposed this motion, urging the district court to reconsider its position on ERISA preemption.

At this point, the district court entered an order that dismissed counts III, V, VIII, and X of the amended complaint as preempted by ERISA. However, the court remanded counts I, II, IV, VI, VII, and IX to the Superior Court, presumably on the grounds either that they were not preempted or that they represented "well-pleaded complaints" to which preemption was either a defense or not available. Nobody was pleased. The Tingeys appealed the dismissals, and Pixley and Blue Cross in turn appealed the court's decision to remand the remaining claims.

II.

## THE PREEMPTION, REMOVAL, AND REMAND PUZZLE

The Tingeys, determined to preserve their partial victory in the district court, initially challenge our power to review the district court's remand of parts of their First Amended Complaint to the Arizona Superior Court. They point to 28 U.S.C. §§ 1447(c) & (d), and argue that it bars our review. Section 1447(c) directs that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In turn, section 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...." The words of these two subsections do appear to favor the Tingeys. Their position is that the district court's remand order embodied a jurisdictional decision under authority of section 1447(c) and that the section 1447(d) bar against any type of review applies.

■■■ But things in law are not always what they appear to be. To illustrate, we begin with the "well-pleaded complaint" rule. Under it, a defendant may not remove a case to federal court unless the plaintiff's complaint states a claim arising under federal law. *See Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914). As Justice Brennan has explained in considerable detail, the well-pleaded complaint rule has developed as a corollary to the long-standing power to remove to federal court any action falling within the original jurisdiction of federal district courts. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846–2847, 77 L.Ed.2d 420 (1983). Under the rule, federal preemption is "ordinarily a federal defense to the plaintiff's suit" and "does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987)

("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue" (emphasis in original)). Thus, in the case of a pleaded state cause of action in state court, a defendant must raise federal preemption as a defense in the state cause of action, and seek redress for any erroneous rulings on the preemption issue in the state court system first. In this manner, the well-pleaded complaint rule operates as a practical limitation on the number of cases that can be removed from state courts.

■ Federal interests and concerns, however, sometimes rise to a level of importance that requires an exception. To invoke it, Congress must have expressed a desire to assert authority over an area to such degree that any claim in that area is deemed federal in character. As the Court put it in *Franchise Tax*, these claims are "purely ... creature[s] of federal law." 463 U.S. at 23, 103 S.Ct. at 2853. They *must* be removed to federal courts and *not* remanded to state courts.

Law governing employee retirement and benefit plans is one area in which Congress has held that complaints, even though apparently "well-pleaded," are but, as the cases put it, "artfully pleaded" federal claims disguised as state claims. In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 64–67, 107 S.Ct. at 1546–48, the Supreme Court held that the civil enforcement provision governing claims for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), was intended to replace similar state common law causes of action to such an extent that they are removable under 28 U.S.C. § 1441(b) as an ERISA-based cause of action.

■ It follows that although the Tingeys' original four-count state cause of action purported to plead only state law claims, the action was properly removed because the claims fell within the purview of the exclusive remedy provisions in ERISA. This means only a federal court can hear the claims when stripped of their state law disguises. The basis of jurisdiction, even though none of the claims facially stated an ERISA cause of action, was federal question jurisdiction.

The Tingeys' First Amended Complaint changed nothing. Having been granted leave to amend their original complaint so that they could proceed under the appropriate "section of ERISA," the Tingeys failed to do so, and instead submitted a ten-count amended complaint that again appeared to plead only state causes of action. Once more they failed to frame their complaint in the only form in which it could be heard.

The district court then did a strange thing. It dismissed counts III, V, VIII, and X, and remanded counts I, II, IV, VI, VII, and IX. This clearly was improper if the "strong" preemption of ERISA makes each and every count a federal claim. That is the question we must now confront.

### III.

### THE REACH OF ERISA PREEMPTION

■ We commence with the Supreme Court's decisions in *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), and *Pilot Life, supra*, as well as by our own decisions in *Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir.1991), and *Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir.1987). These cases teach that ERISA's preemption clause, § 514(a), as set forth in 29 U.S.C. § 1144(a), is to be read expansively. In particular, ERISA preempts state law causes of action that offer remedies for the violation of rights expressly guaranteed by ERISA and exclusively enforced by ERISA's civil enforcement mechanism, § 502(a), 29 U.S.C. § 1132(a). *Ingersoll–Rand*, 111 S.Ct. at 484–86. ERISA preemption also applies to claims against employers and insurers alike. *See Ingersoll–Rand* (employer); *Pilot Life* (insurer). Moreover, a garden variety state law cause of action, not particularly troublesome in circumstances not involving employee benefits, may be preempted where it is used to

remedy exactly the type of illegal activity proscribed by ERISA. *Felton*, 940 F.2d at 510. Finally, an otherwise ERISA-preempted claim may survive to the extent that it relies on a theory independent of the benefit plan. *Sorosky*, 826 F.2d at 800.

*Felton* presented facts similar to those presently before us. Felton, an employee who was terminated after filing a $39,000 claim for medical benefits to cover the cost of his lung cancer treatment, brought suit in state court against his former employer, alleging wrongful termination and handicap discrimination contrary to the Arizona Civil Rights Act, A.R.S. § 41–1461. Felton's complaint did not mention ERISA, and contained no factual allegations to support his contention that his termination was wrongful. *See Felton*, 940 F.2d at 507. At Felton's deposition, it developed that he had been fired because his employer did not want to continue to pay his benefits. The case was removed to federal district court and ultimately appealed to this court. We held that ERISA preempted Felton's state law claims. *Id.* at 508–10.

Guided by *Felton*, we hold that ERISA's powerful preemption transformed all ten of the Tingeys' claims into federal claims. The district court correctly dismissed counts III, V, VIII, and X, but improperly remanded the remaining claims. The Tingeys' sole remedy exists in federal court under ERISA.

■ Counts III, V, and X are transparent variations on the theme that Pixley and Blue Cross, acting jointly or severally, caused Tingey to be fired in order to deny him benefits. Such claims "fall squarely within the ambit of ERISA § 510" and are preempted. *Ingersoll–Rand*, 111 S.Ct. at 485. It makes no difference that count X refers to future benefits rather than current benefits. *See id.*

■ Although counts I, II, IV, and IX appear to concern Mr. Tingey's employment relationship rather than his employee benefit plan, they spring from the handling and disposition of Tingey's medical benefits insurance claim and thus are subject to preemption. *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir.1985). ERISA preemption of an employee's action for wrongful termination, breach of employment contract,[2] or the like turns on the employee's theory of why the termination occurred. The employee's theory may, as in *Felton*, become apparent through discovery, or may, as here, be apparent from the pleadings. The allegations indicate that Pixley terminated Tingey in order to deny him benefits. That is the sole theory Tingey has offered at any stage of the proceedings. Had Tingey, in addition to the theory that he was fired because his employer did not want to pay his benefits, alleged that he was discriminated against on account of age, he would be in a position analogous to the position of the plaintiff in *Sorosky*. His age discrimination theory would not relate to ERISA and would therefore not be preempted. But Tingey has alleged no such facts. At best, as in *Felton*, he has focused on Pixley's lack of a legitimate reason for terminating him while strongly suggesting what Pixley's illegitimate reasons might have been.

■ We next turn to counts VI and VII. Embedded in these counts are allegations of violations of three sections of Arizona's insurance regulations. The Tingeys assert (1) that Blue Cross violated Arizona's equal treatment law by instigating Tingey's firing, A.R.S. § 20–448; (2) that Blue Cross violated the Arizona law requiring coverage of birth defects by instigating Tingey's firing, *id.* § 20–1402; and (3) that Blue

**2.** In *Ingersoll–Rand,* the plaintiff's tort action turned on the existence of an employee benefit plan. Because the plaintiff was an at-will employee, he would have had no action against his employer but for the judicially created wrongful termination action for termination to deny benefits—the action that the Supreme Court found to be preempted by ERISA. In the instant case, it might be argued that Tingey would have an action for breach of employment contract with or without the existence of a benefit plan. Arguably, Tingey's contract cause of action does not "make specific reference to," nor is it "premised on," the existence of a benefits plan, *Ingersoll–Rand,* 111 S.Ct. at 483, and therefore it should not be preempted. As will be shown, however, this argument fails. So long as Tingey's underlying theory of the case revolves around the denial of benefits, his claim falls under ERISA's far-reaching preemption clause.

Cross violated Arizona's insurance conversion law by failing to allow Tingey to convert his policy, *id.* § 20–1408. All of these charges implicate ERISA's saving clause, § 514(b)(2)(A), which exempts from preemption state laws that regulate insurance.[3]

The Court first interpreted the saving clause in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). There, the Court gave effect to a state law requiring mandated benefits in insurance policies. Drawing on a body of law relating to insurance regulation under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, the Court identified three criteria relevant to whether a state law regulated insurance and thus fell within the scope of ERISA's saving clause: (1) whether the law has the effect of spreading risk; (2) whether the law deals with an integral part of the policy relationship between the insurer and the insured; and (3) whether the law is directed only to entities within the insurance industry. *See id.* at 743, 105 S.Ct. at 2390. So long as an examination of these criteria led to the conclusion that the state law regulated the "business of insurance," the saving clause seemed to apply.

The broad implications of *Metropolitan Life Ins. Co. v. Massachusetts* were severely narrowed, however, in *Pilot Life*. In that case, the Court held that the saving clause must be construed in the context of the entire statute. Although the three above-mentioned criteria were still relevant to whether the saving clause was implicated, state laws could not provide remedies in areas where ERISA contemplated an exclusive enforcement scheme. The Court explained:

> *Metropolitan Life [Ins. Co. v. Massachusetts]*, however, did not involve a state law that conflicted with a substan-

tive provision of ERISA. Therefore [our] general observation—that state laws related to ERISA may also fall under the saving clause—was not focused on any particular relationship or conflict between a substantive provision of ERISA and a state law. In particular, [we] had no occasion to consider ... whether Congress might clearly express, through the structure and legislative history of a particular substantive provision of ERISA, an intention that the federal remedy provided by that provision. displace state causes of action.

*Pilot Life*, 481 U.S. at 57, 107 S.Ct. at 1558. In *Ingersoll–Rand*, the Court reaffirmed the hegemony of the ERISA remedial scheme as the sole means of enforcing rights explicitly provided for in ERISA itself. *Ingersoll–Rand*, 111 S.Ct. at 484–86.

 The first two of the Tingeys' alleged violations of state insurance law are clearly preempted. ERISA specifically forbids firing to avoid paying benefits and provides civil enforcement mechanisms to remedy claims brought by an individual.[4] The explicit holding of *Ingersoll–Rand*, which was to preempt a Texas common law cause of action for wrongful discharge in order to avoid paying out pension fund benefits, admits of no other result. The sole remedy for being fired by an employer on account of benefits must be under ERISA, and the saving clause must not be construed to the contrary.

 The Tingeys' alleged violation of A.R.S. § 20–1408 presents a problem not yet faced by the Supreme Court. However, it is plain that ERISA sets forth comprehensive conversion rights for health benefits. *See* 29 U.S.C. §§ 1022–1024, 1161–1167. These provisions create the specific right to conversion, *id.* § 1161(a), specify time periods within which notice of the conversion right must be given, *id.*

---

**3.** "[N]othing ... shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A).

**4.** It might be argued that the Tingeys' action against Blue Cross should not be preempted because the language of ERISA § 510, 29 U.S.C. § 1140, uses verbs such as "discharge, fine, sus-

pend, expel, discipline, or discriminate against," which suggests reference to an employer or an employer's agent, not to an insurer. But the section refers to "any person," not just to an employer. *Id.* We believe that an insurer who coerces an employer to fire an employee must be covered by this language.

§ 1162(5), and detail the maximum period, depending on the circumstances, for which the plan must maintain coverage, *id.* § 1162(2). The health benefit conversion right attaches for both self-funded plans and insured plans. *Id.* § 1167(1). In light of the attention Congress has given to the question of conversion rights for health benefits, we hold *Pilot Life* and *Ingersoll–Rand* require that these rights and the remedies for breaches thereof be exclusively those found in ERISA. To apply the saving clause would allow the employee to end-run an explicit ERISA provision; the employee's remedy under state law might allow for a perpetual right to health benefits. This is at odds with the limits on conversion rights to health benefits set by Congress in ERISA itself, and is contrary to the exclusive nature that Congress intended ERISA-created rights to have. A.R.S. 20–1408 is, therefore, preempted.[5]

There remains only count VIII, which is flatly preempted by *Pilot Life.* Like the Mississippi law against bad faith insurance settlement practices, the Arizona tort under which the Tingeys seek protection "arises from a breach of [a] duty ... implicit in all contracts." *Clearwater v. State Farm Mut. Auto Ins. Co.,* 164 Ariz. 256, 792 P.2d 719, 721 (1990). Such a law fails the *Metropolitan Life Ins. Co. v. Massachusetts* test for inclusion under the saving clause, *see Pilot Life,* 481 U.S. at 49–51, 107 S.Ct. at 1553, and is preempted under *Pilot Life*'s express authority.

## IV.

## CONCLUSION

It follows that the Tingeys have not succeeded in filing a "well-pleaded complaint."

Their remedy is to assert a federal complaint under ERISA. While it is true the Tingeys thus far have failed to file such a complaint, we believe it would be unjust not to afford them one more chance to amend their pleadings. Previously they have not confronted the stark necessity of pleading a federal claim under ERISA or going without a remedy entirely. They now confront that choice.

Therefore, we reverse the judgment below and remand with instructions to provide the Tingeys with one last opportunity to plead a federal cause of action under ERISA.

REVERSED and REMANDED.

---

5. This is not to say that state insurance laws dealing with conversion rights other than those for health benefits are preempted. We express no opinion on this question, except to say that a proper resolution would require an analysis of not only the reach of the saving clause, but of other substantive ERISA provisions that might point to a congressional intent to exclude state regulation. *Compare Henkin v. Northrop Corp.,* 921 F.2d 864 (9th Cir.1990) (state conversion rights for accidental death insurance benefits not preempted); *International Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294 (9th Cir. 1991) (state conversion rights as applied to ERISA plans as opposed to covered employees not preempted) *with Howard v. Gleason Corp.,* 901 F.2d 1154, 1157 (2nd Cir.1990) (state conversion statute for death benefits not integral to insurance law, and preempted by the notice provisions of ERISA, 29 U.S.C. §§ 1022, 1024(b)); *International Resources,* 950 F.2d at 305, 306 (Wellford, J., dissenting) (ERISA's remedy provisions for benefits due supersede state conversion statute for death benefits).