Leona ALBIN; Terry L. Cotton; Patricia E. Claus; Linda Fanning; Lori Newcomb; Elizabeth Ann Robertson; Julie Simmons; and Dawn Whitus, Plaintiffs,

v.

QWEST COMMUNICATIONS CORPORATION, a Colorado corporation formerly known as U.S. West, Defendant.

No. CIV.01–1304–ST.

United States District Court, D. Oregon.

Jan. 24, 2002.

## ORDER

KING, District Judge.

Magistrate Janice M. Stewart filed her Findings and Recommendation (# 15) on December 4, 2001 (the "F & R") and referred it to me on January 8, 2002. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

When either party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. *See* 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Having given a *de novo* review of the issues raised in defendant's objections to the F & R, I find no error. Accordingly, I ADOPT the F & R (# 15) of Magistrate Stewart.

Plaintiff's motion to remand (# 5) is granted.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

Plaintiffs, eight employees of defendant, QWEST Communications Corporation ("QWEST"), originally filed this action in Marion County Circuit Court, *Albin, et al. v. QWEST Communications Corporation,* Marion County Circuit Court, Case No. 01C16226, alleging two claims for relief for violations of Oregon law governing payment of wages. QWEST filed a Notice of Removal to this court on August 31, 2001, alleging federal question jurisdiction under 28 USC § 1331 and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 USC § 1132(e).

Plaintiffs' Motion to Remand (docket # 7) is now before this court. For the reasons that follow, the motion should be granted.

### *DISCUSSION*

Plaintiffs are former employees of QWEST who each developed an illness, injury, or other serious health condition which resulted in their inability to perform their job duties. Complaint, ¶ 4. Each employee became eligible and applied to participate in QWEST's short term disability compensation program. *Id.* Plaintiffs contend that QWEST either "deducted short term disability payments, which it had previously made to plaintiffs, from plaintiffs' wages without obtaining [their] consent" or "coerced certain plaintiffs to forfeit employee benefits such as vacation and sick leave to 'reimburse' defendant for the alleged overpayment of short term disability benefits." *Id,* ¶ 5. In essence, plaintiffs allege that, in violation of ORS 652.140 and 652.610, QWEST recouped disability benefits from plaintiffs by deducting amounts from plaintiffs' subsequent paychecks or by forcing plaintiffs to forfeit vacation or sick leave without written authorization.

Despite the lack of any reference to ERISA in the Complaint, QWEST asserts that plaintiffs seek to recover benefits and raise additional issues under QWEST's Short–Term Disability Plan ("Plan") and,

as such, raise federal claims under § 502(3) of ERISA, 29 USC § 1132(a). Plaintiffs disagree and argue that this case was improvidently removed because their claims are not related to ERISA.

## I. Standard for Removal

■ Pursuant to 28 USC § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or other defendants, to the district court of the United States..." Removal is proper only where the federal court would have had subject matter jurisdiction over the matter if the plaintiff had originally filed the action in federal court. The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), citing *Smith v. Sperling,* 354 U.S. 91, 93, n.1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). The removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). The burden of establishing federal jurisdiction rests with the party seeking removal. *Miller v. Grgurich,* 763 F.2d 372, 373 (9th Cir.1985).

## II. Subject Matter Jurisdiction

■ In this case, removal is proper if there is a federal question. 28 USC § 1331. The plaintiff's well-pleaded complaint ordinarily determines whether there is a federal question. *Franchise Tax Bd. v. Contruction Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Lyons v. Alaska Teamsters Employer Serv. Corp.,* 188 F.3d 1170, 1171 (9th Cir.1999). Presenting a federal question as a defense, such as ERISA preemption, "does not appear on the face of a well-pleaded complaint; and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co.*

*v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

■ The Supreme Court, however, created the complete preemption doctrine as an exception to the well-pleaded complaint rule for all state law claims that fall within the scope of ERISA. *Id* at 63–64, 107 S.Ct. 1542. "The complete preemption doctrine applies when the class of claims by plaintiff is so necessarily federal that removal is always permitted, even if the federal issue is raised as a defense and does not appear on the face of plaintiff's well-pleaded complaint." *Lyons,* 188 F.3d at 1172. Thus, complete preemption creates federal question jurisdiction for removal purposes.

■ Here the Complaint alleges two claims for nonpayment of wages under Oregon law and refers to short term disability benefits, but does not facially assert any ERISA claim. Therefore, this court has original subject matter jurisdiction permitting removal only if ERISA completely preempts either of the state law claims. ERISA completely preempts a claim under state law if two circumstances exist: "(1) ERISA expressly preempts the state law cause of action under 29 USC § 1144(a) (*i.e.* "conflict preemption") and (2) that cause of action is encompassed by the scope of the civil enforcement provision of ERISA, 29 USC § 1132(a) (*i.e.* "displacement")". *Abraham v. Norcal Waste Sys., Inc.,* 265 F.3d 811, 819 (9th Cir.2001).

### A. Conflict Preemption

As the Ninth Circuit has acknowledged, "[d]eveloping a rule to identify whether ERISA *preempts a given state law*—the first step in determining whether ERISA *completely preempts* the law—has bedeviled the Supreme Court." *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 201 F.3d 1212, 1216 (9th Cir.), amended by 208 F.3d 1170 (9th Cir.), *cert denied,* 531

U.S. 992, 121 S.Ct. 482, 148 L.Ed.2d 456 (2000) (emphasis in original). The starting point is the expansive scope of ERISA which "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 USC § 1144(a). The Supreme Court has interpreted the critical statutory phrase "relate to any employee benefit plan" to mean "a connection with or reference to such a plan." *California Div. of Labor Standards v. Dillingham,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). It has further defined the phrase "reference to" as meaning "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation." *Id* at 325, 117 S.Ct. 832. However, rather than defining the phrase "connection with," the Supreme Court requires consideration of " 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Id,* quoting *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 657–58, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("*Travelers*").

"[I]n an effort to follow the Supreme Court in fulfilling the statutory mandate of broad preemption without intruding upon state laws beyond the intentions of Congress and the objectives of ERISA," the Ninth Circuit "has not arrived upon a single, precise rule that universally determines whether ERISA preempts a state law" and instead has "formulated several different, though compatible, tests." *Rutledge,* 201 F.3d at 1217. Declining to develop a test "describing the outer bounds of ERISA [conflict] preemption," it has observed "only that under each test, a core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relation-

ship." *Id* at 1219. More recently, the Ninth Circuit elected not to apply any of its prior tests, explaining:

> First, we note that the Supreme Court's recent cases have eschewed such multifactor tests in favor of a more holistic analysis guided by congressional intent.... Second, though perhaps useful tools in other contexts, these tests are of marginal utility, where, as here, the question boils down to whether state tort law "relates to" an ERISA plan. Our efforts, like the Supreme Court's, have not succeeded in making this inquiry a precise one.

*Dishman v. UNUM Life Ins. Co. of Am.,* 269 F.3d 974, 981 n. 15 (9th Cir.2001) (citations omitted).

Here the "reference to" prong of the Supreme Court's interpretation of ERISA clearly does not apply. Oregon law governing the payment of wages does not act immediately and exclusively upon an ERISA plan, nor is such a plan essential to the operation of the law. It applies to wages payable by all Oregon employers to all employees, regardless of whether of an ERISA plan exists covering those employees. Instead, the key issue in this case is whether plaintiffs' state law claims "relate to any employee benefit plan" by having the necessary "connection with" an ERISA plan.

■■ According to the Supreme Court, "[t]he basic thrust of the preemption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefits plans." *Travelers,* 514 U.S. at 657, 115 S.Ct. 1671. Looking to a state law's effect on ERISA plans, ERISA does not preempt a state law which "has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Id.* Accordingly, the Supreme Court recog-

nized at least three areas in which ERISA was intended to preempt state law claims:

First, Congress intended ERISA to preempt state laws that "mandate [ ] employee benefit structures or their administration." . . .

Second, Congress intended to preempt state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself. . .

Third, in keeping with the purpose of ERISA's preemption clause, Congress intended to preempt "state laws providing alternate enforcement mechanisms" for employees to obtain ERISA plan benefits.

*Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1468 (4th Cir.1996), quoting *Travelers,* 514 U.S. at 658, 115 S.Ct. 1671 (internal citations omitted); *Rutledge,* 201 F.3d at 1217.

The first two areas are traditionally associated with ERISA preemption. If state laws mandate specific employee benefit structures or their administration, then they necessarily and improperly require ERISA plans to deviate from a national norm and vary their administration of benefits from state to state. *E.g., Egelhoff v. Egelhoff,* 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (Washington law providing for automatic revocation upon divorce of any designation of a spouse as a beneficiary for a non-probate asset); *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (Pennsylvania law affecting calculation of benefit levels); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (New York's Human Rights law extending benefits to persons disabled by pregnancy); *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (New Jersey law prohibiting plans from setting workers' compensation payments off against retirement benefits or pension).

QWEST contends that Oregon laws governing the payment of wages falls into these areas of preempted claims by regulating the payment of employee benefits under the Plan. Under the terms of the Plan, participants are eligible for short term disability benefits if they are disabled and comply with certain specific notification, filing, treatment and documentation requirements. Once a participant is determined to be disabled, he or she is entitled to receive short term disability payments until certified as able to return to work full-time or to his or her current scheduled hours. Under this arrangement, it is possible that a participant may receive short term disability benefits for a period when he or she is not deemed to be disabled.

In order to allow QUEST to recoup payments made for periods when a participant was not in fact disabled, the Plan specifically allows QWEST to deduct payments from the participant's paycheck:

The Company reserves the right to deduct overpayment amounts from future Plan payments or other payments due the Participant, from the Company or any of its subsidiary companies to the extent permitted by law. If the Participant has returned to a Participating Company's payroll, reimbursements may be paid through payroll deduction, if permitted by law, and when written authorization of the Participant is received, if such authorization is required by state law.

Plan, § 4.5(d).

The Plan sets forth a specific claim procedure to be followed for a participant to file a claim for benefits under the Plan or to review "any other appropriate matter related to the Plan." *Id,* § 7.1. The Plan also provides for an appeal procedure in

the event the participant's claim is denied. *Id,* § 7.2.

In the event a participant receives an overpayment of benefits, QWEST, as the Plan administrator, has a fiduciary duty to recoup those benefits. To the extent that plaintiffs seek to enforce Oregon law to bar recoupment of benefits through a payroll deduction, QWEST asserts that they seek to improperly interfere with administration of the Plan.

But for a decision by the Plan that plaintiffs had been overpaid benefits, QWEST would have made no payroll deduction. Nevertheless, QWEST's argument rests on the erroneous assumption that plaintiffs are seeking to recover benefits due from the Plan. ERISA provides an avenue for resolving whether plaintiffs were entitled to payment of the benefits in the first place. If plaintiffs believe that they are entitled to those benefits, then, as beneficiaries of the Plan, they may file a civil action under ERISA "to recover benefits due to [them] under the term of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan". 29 USC § 1132(1)(B).

However, plaintiffs are not challenging the Plan's decision that it had overpaid benefits to them. Under the terms of the Plan, they may well have erroneously received payment of benefits. What they do challenge is the method used by QWEST to recoup those benefits through a payroll deduction without the written authorization required by Oregon law.[1] To determine whether or not state law was violated as alleged, the Plan is irrelevant. The only issue is whether plaintiffs gave the requisite statutory authorization.

The Plan is consistent with the Oregon Wage Law in that it allows reimbursement through a payroll deduction only "if permitted by law, and when written authorization of the Participant is received, if such authorization is required by state law." Pursuant to this provision, plaintiffs presumably could sue the Plan's administrator under ERISA for violating the terms of the Plan by obtaining reimbursement through a payroll deduction without plaintiffs' written authorization. However, the fact that the Plan and Oregon law both require plaintiff's written authorization does not convert a state law claim against the employer for violating Oregon law into an ERISA claim against the Plan's administrator for violating the terms of the Plan. By incorporating state law, the Plan does not thereby supersede state law.

QWEST confuses its duty, as the Plan administrator, to recoup benefits as part of its administration of the Plan with its duty, as an employer, to its employees under the Oregon wage law. The duty to recoup wrongfully paid benefits is separate and apart from the method used to comply with that duty. Plaintiffs are suing their employer, not the Plan administrator, for an unlawful payroll deduction. If they prevail, their employer, not the Plan administrator, is liable for the amount of the deduction and possibly for a 30 day statutory penalty as well. *See* ORS 652.150. Rather than suffer this loss should plaintiffs prevail, the employer may seek to transfer liability to the Plan administrator who presumably requested and received the payroll deduction. The Plan administrator may then choose to sue plaintiffs to recoup its overpayment of benefits. In other words, this court can conceive of a

---

1. ORS 652.610(3)(c) prohibits a payroll deduction by an employer unless "[t]he employee has voluntarily signed an authorization for a deduction for any other item, provided that

the ultimate recipient of the money withheld is not the employer, and that such deduction is recorded in the employer's books."

scenario of circular litigation ending in ERISA claims to determine whether or not the Plan overpaid benefits to plaintiffs. Nevertheless, ERISA does not preclude plaintiffs from suing their employer for the allegedly wrongful act in the first instance of making a payroll deduction without authorization in violation of Oregon law. Plaintiffs' claims against their employer cannot be said to "mandate employee benefit structure or their administration."

ERISA does preempt state laws authorizing causes of action for the improper handling of claims under employee benefit plans. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 135, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (ERISA preempted "a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA"); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ("[t]he common law causes of action raised in [the beneficiary's] complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under [§ 1144(a) ]"); *Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124 (9th Cir. 1992) (ERISA preempted state law claims in connection with plaintiff's wrongful termination in order to deny him health benefits and his insurer's refusal to allow him to convert a health policy); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1095 (9th Cir.1985) (ERISA preempted a claim for breach of the implied covenant of good faith and fair dealing for mishandling a claim for early retirement benefits);

By contrast, plaintiffs' claims are brought against QWEST in its capacity as their employer and concerns only the employment relationship, not the Plan. Unlike *Tingey,* plaintiffs' theory of the case does not revolve around the propriety of the Plan's denial of benefits, but only upon the employer's wrongful conduct. The reason for the deduction is not critical to plaintiffs' success. In the circumstances of this case, the connection between the state common law principles and ERISA's regulation of employee benefit plans is simply too "tenuous, remote, or peripheral" to trigger preemption. *See Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890.

The state law claims here arise under Oregon law governing wages which has general application and do not fall within the traditional area of preemption. It does not bind employers or plan administrators to any particular employee benefit structures or preclude uniform administrative practice with respect to employee benefit plans.

Thus, this court concludes that Oregon law barring unauthorized deductions from paychecks by employers does not "relate to" the Plan. The state statute does not modify or regulate the Plan, but addresses only the means by which the employer's obligation to plaintiffs is to be determined and not the amounts owed to plaintiffs under the Plan. *See Martco Partnership v. Lincoln Nat'l Life Ins. Co.,* 86 F.3d 459, 463 (5th Cir.1996) (state law allowing pro rata offset for payments made to disabled employee by Social Security Administration and ERISA plan not preempted). The state law encroaches only on the relationship between employers and employees and not between the Plan and its participants. While the language of the Plan requires compliance with state law for reimbursement of disability payments through a payroll deduction, a law or claim is preempted when it relates to an ERISA plan, and not *vice versa.* Although not binding on this court, at least two other district courts have reached the same conclusion that ERISA does not preempt application of other state wage laws to an employer's payroll deduction to recoup

past overpayments to an employee from an ERISA plan. *Nagel v. Chukerman Packaging, Ltd.*, 19 F Supp2d 826 (N.D.Ill. 1998); *Fox v. General Motors Corp.*, 863 F.Supp. 302 (S.D.W.Va.1994).

### B. *Displacement*

 QWEST contends that plaintiffs' claims should be displaced for purposes of the complete preemption analysis because they are encompassed by ERISA's civil enforcement provision, specifically 29 USC § 1132(a)(1)(B). However, as discussed at length above, plaintiffs are pursuing their rights under state law against their employer, not upon any rights that are conferred, enforced, or governed by ERISA. " '[A]n otherwise preempted claim may survive to the extent that it relies on a theory independent of the benefit plan.' " *Abraham*, 265 F.3d at 824, quoting *Tingey*, 953 F.2d at 1131.

Because the state law claims are not both preempted and displaced, they are not *completely* preempted and thus do not bar removal.

### *RECOMMENDATION*

For the reasons stated above, plaintiff's Motion Remand Case to Marion County Circuit Court (docket #16) should be GRANTED and this case should be remanded to the Marion County Circuit Court, State of Oregon, *Albin, et al. v. QWEST Communications Corporation*, Marion County Circuit Court, Case No. 01C16226. Given the complexity of and the uncertainty as to the application of the complete preemption doctrine in this case, this court further recommends that plaintiffs should not be awarded any attorney fees or costs which they otherwise may recover under 29 USC § 1447(c).

### *SCHEDULING ORDER*

Objections to the Findings and Recommendation, if any, are due December 21, 2001. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than January 9, 2002. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

Dec. 4, 2001.