Filed 12/6/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID SKILLIN, <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> RADY CHILDREN'S HOSPITAL-SAN DIEGO, <br><br>     Defendant and Respondent. | D071288 <br><br><br><br> (Super. Ct. No. <br> 37-2014-00008730-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Joel R. Wohlfeil, Judge. Affirmed.

Hayes & Ortega, Dennis J. Hayes and Tracy J. Jones for Plaintiff and Appellant.

Littler Mendelson, Theodore R. Scott and Matthew Bryan Riley for Defendant and

Respondent.

David Skillin brought a Private Attorneys General Act lawsuit against his former

employer Rady Children's Hospital of San Diego (Rady) for alleged violations of the

California Labor Code. Skillin claimed Rady made unauthorized payroll deductions from

his wages, resulting in higher than desired contributions to his retirement plan.

(Lab. Code, §§ 221–224.) He also claimed Rady issued inaccurate wage statements by failing to show the amounts deducted for retirement "on written orders of the employee." (Lab. Code, § 226.)

The trial court granted summary judgment in Rady's favor, concluding Skillin's claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA). The court found preemption under ERISA section 514(a), which applies to state laws that "relate to any employee benefit plan." (29 U.S.C. § 1144(a).) It did not, however, find preemption under ERISA section 514(e), which applies to state laws that "directly or indirectly prohibit or restrict the inclusion in any plan of an automatic contribution arrangement." (29 U.S.C. § 1144(e)(1).)[1]

We affirm. We need not decide whether Skillin's claims are preempted under subdivision (a) of section 514 because they are plainly preempted under subdivision (e) of that same section.

FACTUAL AND PROCEDURAL BACKGROUND

Skillin worked for Rady as a Cardiovascular Technologist/Anesthesia Technologist from 1997 through December 2014. Rady administers a pension benefit plan that it offers to its employees (the Plan).[2] Employees make pretax contributions to the Plan through payroll deductions, and Rady offers matching contributions.

---

[1] For ease of reference, we will refer to these statutory bases for ERISA preemption throughout this opinion as "section 514(a)" and "section 514(e)" preemption.

2

At some point Rady created an automatic enrollment program for new hires. Since at least 2009, all new hires have been automatically enrolled in the Plan and signed up to contribute three percent of their pretax earnings through payroll deductions unless they *opt out* or elect a different percentage. Over time Rady phased out the fixed dollar amount contribution option. Since at least 2010, Plan participants have been permitted to elect contributions only as a percentage of their earnings, not as a fixed dollar amount.

Skillin enrolled in the Plan before 2010 and had opted to contribute a fixed dollar amount of $700 per pay period to his retirement plan. For years, Rady allowed Skillin and other similarly situated employees to make fixed dollar amount contributions to their plans. But in February 2014, Rady converted the fixed dollar amount deduction to a percentage of earnings deduction for those employees. Rady sent these employees the following notice:

> "In an effort to help employees save for retirement, a change has been made to the way you elect your contributions to the Rady Children's Hospital 403(b) Plan (the 'Plan').
>
> "Previously, you contributed a fixed ***dollar amount*** to the Plan each pay period, but effective January 19th, 2014 your contributions were converted to a ***percentage*** of your bi-weekly pay. No action was required by you to make this change; your current contribution was converted to a percentage of your pay and was calculated to be as close as possible to your previous dollar amount contribution. The new contribution amount will be on your February 7, 2014 paycheck.
>
> [¶] . . . [¶]

---

2      The trial court found, and the parties do not dispute, that Skillin's retirement plan under 29 United States Code section 403(b) qualifies as an "employee pension benefit plan" subject to the Federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.

"To see how your pre-tax contribution affects your take home pay, please go to the Take Home Pay Calculator tool available in the 'Library' section at www.fidelity.com/atwork. Please note: **you can change the percentage of your contribution to the Plan at any time** by visiting www.fidelity.com/atwork, or speaking with a Fidelity Representative . . . ."

Skillin was informed by email that Rady would be deducting 18 percent from his wages per pay period going forward. Less than a week later he responded, inquiring whether he could continue with a fixed-dollar deduction. Shortly thereafter he received another email from the human resources department stating that his contribution level should have been set at 11 percent and asking if he wanted that percentage deducted from his next paycheck instead. There is no indication Skillin responded. On February 7, 2014, Rady deducted $1351.21 from his wages, totaling 18 percent of his earnings. Rady continued to deduct 18 percent of his wages from subsequent paychecks, consistently exceeding the $700 amount that Skillin had expressly authorized. Skillin's wage statements noted the total amount deducted from his wages for retirement each pay period.

In March 2014 Skillin sued Rady on behalf of himself and other similarly situated employees who were automatically switched from the fixed dollar amount contribution option. He asserted two causes of action under the California Labor Code. First, he alleged that Rady violated sections 221 to 224 of the Labor Code when it made deductions from his wages without written authorization. He also alleged Rady violated section 226 of the Labor Code when it issued wage statements that did not itemize the portion of wage deductions that were made pursuant to his written authorization (the

4

wage statement claim). Rady tried to remove the case to federal court, but it was remanded because it was not completely preempted under ERISA. (29 U.S.C. § 1132(a).)[3]

Back in state court, Rady moved for summary judgment, or in the alternative for summary adjudication. (Code Civ. Proc., § 437c, subds. (a) & (f).) It urged the court to find all of Skillin's claims preempted under ERISA sections 514(a) and 514(e) and grant summary adjudication on the wage statement claim. Skillin did not dispute the facts in Rady's separate statement but urged the court to follow a federal district court opinion, *Albin v. Qwest Communs. Corp.* (D. Or. 2002) 194 F.Supp.2d 1138 (*Albin*), to find no preemption.

The court granted summary judgment in Rady's favor, concluding Skillin's claims were preempted under section 514(a). Finding *Albin* unpersuasive, the court relied instead on Department of Labor opinion letters submitted by Rady. The court rejected section 514(e) preemption, reasoning that the authorization for deductions required under state law did not prohibit or restrict Rady from including an automatic contribution arrangement in the Plan. Because it granted the motion based on section 514(a) preemption, the court found it unnecessary to address the merits of the wage statement claim. It nonetheless found that no violation occurred because Skillin's wage statements

---

3    *Complete* preemption is a different concept than *conflict* (or *express*) preemption. Complete preemption is jurisdictional and supports removal to federal court, whereas conflict preemption is not jurisdictional and merely affords a defense to a state law claim. (Chin, et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2016) ¶¶ 15:320 to 15:323, pp. 15–46 to 15–47.)

itemized deductions made toward the Plan, and the Labor Code did not require Rady to separately delineate the amount deducted pursuant to written authorization.

DISCUSSION

Skillin's complaint included two causes of action. The first alleged that Rady violated Labor Code sections 221 to 224 by deducting unauthorized amounts from his paychecks to fund the plan. Those provisions make it "unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." (Lab. Code, § 221.) If a wage agreement is reached through collective bargaining, it is unlawful for the employer to withhold wages, except "when a deduction to cover health and welfare or pension plan contributions is expressly authorized by a collective bargaining or wage agreement." (Lab. Code, §§ 222, 224.) Likewise, an employer may not "secretly pay a lower wage while purporting to pay the wage designated by [the applicable] statute or contract." (Lab. Code, § 223.)

The second cause of action, the wage statement claim, alleged that Rady violated Labor Code section 226, subdivision (a), which requires employers to provide each employee "an accurate itemized statement in writing showing (1) gross wages earned, . . . (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, [and] (5) net wages earned." Skillin alleged that by not itemizing authorized deductions, Rady's wage statements inaccurately reflected the net pay he *should have* received but for the unauthorized deductions.

Skillin challenges the court's decision granting summary judgment in Rady's favor. He argues his claims are not preempted under section 514(a) because they do not

6

challenge Rady's administration of the Plan. According to Skillin, to decide his state law claims it is immaterial *where* Rady directed his wage deductions or *how* it administered his retirement plan. And even if preemption applies, Skillin contends the wage statement claim should survive. Skillin agrees with the trial court's ruling in only one respect: he urges us to affirm the court's determination that section 514(e) preemption does not apply. In turn, Rady urges us to affirm summary judgment and further find preemption under section 514(e).

The purpose of summary judgment is to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) Summary judgment is proper if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the grant of summary judgment independently, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) Because we review "the ruling, not the rationale," we may affirm summary judgment on a different basis than the trial court. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.)

As we explain, summary judgment was proper because Skillin's claims are preempted under section 514(e).

1.    *ERISA Preemption*

"ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various benefits. [Citation.]  The 'comprehensive and reticulated statute,' [citation], contains elaborate provisions for the regulation of employee benefit plans.  It sets forth reporting and disclosure obligations for plans, imposes a fiduciary standard of care for plan administrators, and establishes schedules for the vesting and accrual of pension benefits." (*Massachusetts v. Morash* (1989) 490 U.S. 107, 112–113 (*Morash*).)

"ERISA does not guarantee substantive benefits.  The statute, instead, seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures."  (*Gobeille v. Liberty Mut. Ins. Co.* (2016) 136 S.Ct. 936, 943 (*Gobeille*).)  "Those systems and procedures are intended to be uniform. [Citation.]  'Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of "minimiz[ing] the administrative and financial burden[s]" on plan administrators—burdens ultimately borne by the beneficiaries.' " (*Ibid.*)  Express preemption under ERISA serves the goal of uniformity.  (See *ibid.*)

ERISA provides two possible bases for express preemption here.  The first, under section 514(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  (29 U.S.C. § 1144(a).)  The second, under section 514(e), preempts state laws that "would directly or indirectly prohibit or restrict the

8

inclusion in any plan of an automatic contribution arrangement."  (29 U.S.C.

§ 1144(e)(1).)

      a.     *Section 514(a) preemption*

Preemption under section 514(a) has been extensively litigated.  Over time, the

Supreme Court has settled on a generally understood framework for the analysis.  Where,

as here, a state law falls within a field of traditional state regulation, the party claiming

preemption bears a "considerable burden" to overcome the "starting presumption" that

Congress did not intend to supplant state law.  (*New York State Conf. of Blue Cross &*

*Blue Shield Plans v. Travelers Ins. Co.* (1995) 514 U.S. 645, 654 (*Travelers Ins. Co.*);

*De Buono v. Nysa–Ila Medical & Clinical Services Fund* (1997) 520 U.S. 806, 814; see

*Morash, supra,* 490 U.S. at p. 119 ["States have traditionally regulated the payment of

wages."].)  A state law is preempted under section 514(a)'s "relate to" language if it either

makes "reference to" or has an impermissible "connection with" an ERISA plan.

(*California Division of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*

(1997) 519 U.S. 316, 324 (*Dillingham*); *Gobeille, supra,* 136 S.Ct. at p. 943.)

Under the "reference to" prong, ERISA preempts a state law that " 'acts

immediately and exclusively on ERISA plans . . . or where the existence of ERISA plans

is essential to the law's operation.' "  (*Gobeille, supra,* 136 S.Ct. at p. 943.)  Skillin's

claims are not preempted under this prong.  The Labor Code provisions at issue are laws

of general applicability that pertain to all California employees regardless of whether they

are covered by an ERISA plan.  They are not aimed at ERISA plans; nor are Skillin's

claims dependent on the existence of an ERISA plan.  (See *Dillingham, supra,* 519 U.S.

9

at pp. 324–325 [no preemption under "reference to" prong because state law was "indifferent" to the existence of an ERISA plan]; *Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1166–1167 [same; state law was one of "general application" that neither mentioned ERISA plans nor was specifically designed to affect employee benefit plans] (*Betancourt*).)

The "connection with" prong of section 514(a) presents a closer call. A state law has an impermissible "connection with" an ERISA plan if it " 'governs . . . a central matter of plan administration' " or " 'if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.' " (*Travelers Ins. Co., supra* 514 U.S. at p. 668.) We look at ERISA's objectives and consider the state law's impact to determine whether Congress intended preemption. (*Dillingham, supra,* 519 U.S. at p. 325.) A state law that covers issues "quite remote from the areas with which ERISA is expressly concerned" is not preempted. (*Id.* at p. 330.) By contrast, a "direct regulation a fundamental ERISA function" is preempted. (*Gobeille, supra,* 136 S.Ct. at p. 946.)

Addressing similar state labor statutes, there is authority going both ways. On the one hand, ERISA preempts state laws that directly regulate a fundamental ERISA function. (*Gobeille, supra,* 136 S.Ct. at p. 946.) The United States Department of Labor has issued interpretive opinions indicating that state laws like those at issue here affect plan funding, which "implicates an area of core ERISA concern." (U.S. Dept. of Labor, ERISA Opn. Letter 2008–02A (Feb. 8, 2008); see U.S. Dept. of Labor, ERISA Opn.

10

Letter 94–27A (Jul. 14, 1997).)[4]  Under ERISA, administrators must "provide a procedure for establishing and carrying out a funding policy" and "specify the basis on which payments are made to and from the plan."  (29 U.S.C. § 1102(b)(1) & (b)(4).)  The Plan documents reference Rady's obligations to establish funding policies.  Thus, section 514(a) arguably preempts Skillin's claims.

But there is also authority against section 514(a) preemption.  ERISA does not regulate the payment of wages for services performed, and the Labor Code provisions at issue have an entirely different aim than ERISA.  (*Morash, supra,* 490 U.S. at p. 115 ["the danger of defeated expectations of wages for services performed [is] a danger Congress chose not to regulate in ERISA"]; *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1118–1119 [state wage deduction laws seek to protect employees from the hardship of unanticipated deductions].)  Courts have rejected arguments that ERISA preempts state labor laws regulating areas remote from ERISA's scheme.  (*Morash*, at p. 115 [state law regulating vacation pay]; *Dillingham, supra,* 519 U.S. at p. 330 [California law regulating apprenticeship wages]; *Betancourt, supra,* 31 Cal.4th at pp. 1167, 1171 [California mechanics lien law].)

That an ERISA plan was the ultimate *recipient* of Skillin's wage deductions does not on its own compel preemption.  (*Betancourt, supra,* 31 Cal.4th at p. 1172 [no

---

4    The Department of Labor's reasonable views, while not binding, are entitled to respect to the extent they have the power to persuade.  (*Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1057; *Christensen v. Harris County* (2000) 529 U.S. 576, 587 [distinguishing agency opinion letters from formal notice-and-comment rulemaking in regulations, which are subject to *Chevron* deference].)

preemption where "[n]either the plan, nor its administration and management, nor the benefits it provides, are implicated *except insofar as it may be the recipient* of any amounts recovered under the lien"], italics added.) Moreover, two federal district courts faced with similar claims have not found preemption under section 514(a). (*Albin, supra,* 194 F.Supp.2d at pp. 1144–1145[5]; *Fox v. Gen. Motors Corp.* (S.D.W.Va. 1994) 863 F.Supp. 302, 305.)

In short, to the extent the Labor Code provisions are deemed to be a direct regulation of a core ERISA function, Skillin's claims are preempted under section 514(a)'s "connection with" prong. But if the provisions instead merely concern the payment of wages and regulate matters remote from ERISA's scheme, preemption would not apply. We ultimately do not need to resolve the conflict. Skillin's claims are preempted under section 514(e), and we can affirm the grant of summary judgment in Rady's favor on that basis alone.

b.     *Section 514(e) preemption*

In 2006, Congress passed the Pension Protection Act (PPA) to shore up pension solvency. The PPA amended the Internal Revenue Code of 1986 and ERISA in order to encourage automatic enrollment in ERISA pension benefit plans. (Pub.L. No. 109–280, § 902 (Aug. 17, 2006) 120 Stat. 1033.) To facilitate automatic enrollment, the PPA

---

[5]     Rady is correct that *Albin* addressed *complete* preemption, a different concept than conflict/express preemption, and applied an abrogated test in doing so. (*Fossen v. Blue Cross & Blue Shield of Mont.* (9th Cir. 2011) 660 F.3d 1102, 1111–1112; *Albin, supra,* 194 F.Supp.2d at p. 1141.) But the abrogated test the court applied considered whether the claims would be *conflict*-preempted under section 514(a).

12

added a new basis for express preemption. Under section 514(e), ERISA preempts any state law "which would directly or indirectly prohibit or restrict the inclusion in any plan of an automatic contribution arrangement." (29 U.S.C. § 1144(e)(1).)

An "automatic contribution arrangement" can consist of an ERISA plan funding policy in which "a participant *is treated as having elected* to have the plan sponsor make such contributions in an amount equal to a uniform percentage of compensation provided under the plan *until the participant specifically elects* not to have such contributions made (or specifically elects to have such contributions made at a different percentage)." (29 U.S.C. § 1144(e)(2)(B), italics added.) An ERISA plan administrator must give plan participants who are impacted by the automatic contribution arrangement written notice of their rights and obligations, including their right to change their contribution levels or opt out. (29 U.S.C. § 1144(e)(3)(A)–(B).)

Rady argues that section 514(e) preempts Skillin's claims. The trial court rejected this contention, concluding that the written authorization for deductions required under state law did not necessarily restrict Rady from including an automatic contribution arrangement in its ERISA plan. We reach a different conclusion.

The parties have not cited, nor have we found, any case law interpreting section 514(e). We therefore apply familiar principles of statutory interpretation to determine whether the statute preempts Skillin's state law claims. Our primary task is to determine the lawmakers' intent, and we look first to the words of the statute themselves to give effect to the apparent statutory purpose. (*MacIsaac v. Waste Management Collection and Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083 [collecting cases].) "When the plain

13

meaning of the statute's text does not resolve the interpretive decision, we must proceed to the second step," considering cannons of statutory construction and "extrinsic aids, including the statute's legislative history." (*Ibid.*) If ambiguity still remains, then we "cautiously take the third and final step," applying " 'reason, practicality, and common sense" to "consider the consequences that will flow from a particular interpretation," and the historical context or problem the legislation sought to address. (*Id.* at p. 1084.)

In 2008, Rady adopted an automatic enrollment program for its new hires. Unless they opted *out* of the program or affirmatively elected a different percentage, new hires were automatically enrolled to contribute three percent of their pretax earnings to their 403(b) plans. Although employees like Skillin who enrolled before 2010 and elected fixed dollar contributions were initially allowed to continue making those fixed contributions, Rady automatically switched them in 2014 to a percentage-of-earnings scheme that was supposed to track their prior elections. Skillin and other employees were given notice and told they "could change the percentage of [their] contribution to the Plan at any time."

Post-2014 Skillin's retirement plan was funded through an "automatic contribution arrangement" within the meaning of section 514(e). To see why this is so, consider a hypothetical person hired by Rady in 2009. Rady would treat that person as if she had elected to contribute the uniform contribution level of three percent toward her retirement *until* she opted out or elected a different percentage. If she then elected a different percentage, her plan would continue to be funded through an "automatic contribution

14

arrangement" but at a different amount than the "uniform percentage" initially applicable to new hires. (29 U.S.C. § 1144, subd. (e)(2)(B).)

Skillin is in a functionally equivalent position with respect to ERISA. As an existing employee, Skillin was not automatically *enrolled* in the Plan like new hires—he was already enrolled when the automatic enrollment program began. So Rady set his contribution level to be "as close as possible" to his $700 affirmative election. Like the new hire who changed her election, Skillin was treated as remaining *in* the pretax contribution program at a set percent of his compensation (be it 18 percent or 11 percent) unless he specifically opted out or elected a different percentage. (29 U.S.C. § 1144(e)(2)(B).)

ERISA section 514(e) expressly preempts state laws that directly or indirectly prohibit or restrict plan administrators like Rady from adopting an automatic contribution arrangement as part of its funding policy. (29 U.S.C. § 1144(e)(1).) Applying California's wage deduction laws here would do just that. California employees could not be *treated as having elected* contributions and would instead have to expressly opt *in* to the Plan by giving Rady written authorization for any wage deductions. A law requiring written authorization for wage deductions is incompatible with permitting *automatic* contribution arrangements in which employees are *treated* as having opted in.

Skillin's argument that the automatic enrollment program applied only to new hires is beside the point. *His* ERISA plan was funded pursuant to an automatic contribution arrangement beginning in 2014. (29 U.S.C. § 1144(e)(2)(B).) That new hires had a slightly different automatic contribution arrangement is immaterial.

15

Indeed, preemption would apply under section 514(e) even if Skillin's plan was *not* funded through an "automatic contribution arrangement." Pursuant to Department of Labor regulations, "[a] State law that would directly or indirectly prohibit or restrict the inclusion in any pension plan of an automatic contribution arrangement is superseded as to *any* pension plan, regardless of whether such plan includes an automatic contribution arrangement as [that term is] defined [in the regulation]." (29 C.F.R. § 2550.404c–5(f)(2) (2017), italics added.)[6] "With the enactment of section 514(e), Congress intended to occupy the field with respect to automatic contribution arrangements. Thus, section 514(e) does not merely supersede State laws 'insofar' as any particular plan complies with this final regulation, but rather generally supersedes any law 'which would directly or indirectly prohibit or restrict the inclusion in any plan of any automatic contribution arrangement.'" (The Default Investment Alternatives Under Participant Directed Individual Account Plans, Final Rule, 72 Fed.Reg. 60465–60466 (Oct. 24, 2007), codified at 29 C.F.R. § 2550.)

In enacting section 514(e), Congress gave the Department of Labor discretion to determine whether to condition preemption on a plan's compliance with certain minimum standards. (29 U.S.C. § 1144(e)(1).) The Department in turn set standards for "qualified default investment alternatives" that are entitled to exemption from certain fiduciary requirements. (29 C.F.R. § 2550.404c–5(a)–(e).) However, it *declined* to condition

---

6    "[A] court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute." (*Christensen v. Harris County, supra,* 529 U.S. at pp. 586–587, citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council* (1984) 467 U.S. 837, 842–844.)

16

preemption on those standards. (*Id.*, subd. (f).) Deciding it would be "inappropriate to discourage plan fiduciaries from selecting default investments that are not identified in the regulation," the Department concluded ERISA preemption should apply broadly to "[s]tate laws that hinder the use of any other default investments." (The Default Investment Alternatives Under Participant Directed Individual Account Plans, Final Rule, 72 Fed.Reg. 60466 (Oct. 24, 2007), codified at 29 C.F.R. § 2550.)

Thus, it does not matter whether *Skillin's* plan was funded pursuant to an "automatic contribution arrangement" or whether the "automatic contribution arrangement" included in Rady's Plan met regulatory requirements. The only question is whether application of sections 221 to 224 and 226 of California's Labor Code *would* prohibit or restrict Rady from including an automatic contribution arrangement in its ERISA plan. Plainly, it would. Rady would be "restricted" because it could not have an automatic contribution arrangement that would *treat* employees as having opted into the Plan without first obtaining written authorization for any wage deductions.

Skillin's Labor Code claims are preempted under the plain language of section 514(e). Although we reach the preemption conclusion for a different reason than the trial court, summary judgment was proper. (*Salazar v. Southern Cal. Gas Co., supra,* 54 Cal.App.4th at p. 1376.) Skillin's policy argument that he will be deprived of a meaningful remedy if we find preemption does not change our analysis. "ERISA preempts state law claims, even if the result is that a claimant, relegated to asserting a claim only under ERISA, is left without a remedy." (*Bast v. Prudential Insurance Co of*

17

*America.* (9th Cir.1998) 150 F.3d 1003, 1010; see *Hollingshead v. Matsen* (1995) 34 Cal.App.4th 525, 532 [same].)

2.      *Wage Statement Claim*

The trial court deemed Skillin's second cause of action "wholly derivative" and preempted in the same manner as his first.  That is correct.  Skillin's theory is that although Rady's wage statements accurately listed the total amounts deducted, Rady failed to delineate the *portion* of the deduction that was based on his written authorization, that is, none.  In other words, the wage statement claim rises and falls on whether Rady is liable for making *unauthorized* deductions in violation of Labor Code sections 221 to 224.  To the extent ERISA preempts state law claims for unauthorized wage deductions, as we find it does, it also preempts Skillin's derivative claim for inaccurate wage statements.[7]

---

7       Given our ruling on preemption, we do not reach Skillin's remaining arguments that the trial court misinterpreted his claim as seeking recovery of Plan benefits and that the court erred in granting summary adjudication as to the Labor Code section 226 claim.

DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


DATO, J.

WE CONCUR:


HALLER, Acting P. J.


O'ROURKE, J.